IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Civil Action No. 05-1098

HOME EQUITY ACCESS, L.C.A., Appellant

v.

RONALD J. SOMMERS, TRUSTEE, Appellee

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Ronald J. Sommers, Trustee
v.
Home Equity Access, L.C.A. and Cynthia Jackson
Adversary No. 03-4100

## MEMORANDUM AND ORDER

Home Equity Access, L.C.A. ("Appellant") and Ronald L. Sommers, Trustee in the Chapter 7 bankruptcy of Joseph C. Coppola (referred to hereafter as "Trustee"), each appeals from a decision of the Bankruptcy Court in the above-captioned adversary proceeding. This Court has jurisdiction pursuant to 28 U.S.C. §158(a)(1).

I.   Factual Background

The underlying facts are largely undisputed. The following narrative is based on the parties' stipulations. Joseph C. Coppola, the Debtor ("Debtor"), filed his voluntary petition under Chapter 7 in October 2001. The Trustee was appointed shortly thereafter. Within the year prior to his filing for bankruptcy, the Debtor had transferred substantial property (the "Transfers") to Cynthia Jackson ("Jackson"), a woman with whom he was living. The Transfers

included cash in the amount of $164,605.56, which was used to buy a house in Essex County, New York (the "NY Property").

Soon after the Debtor filed bankruptcy, the Trustee filed an adversary proceeding to recover the Transfers from Jackson, and recorded a *lis pendens* on the NY Property in December 2001. A copy of the *lis pendens* was served on Jackson in December. The only prior recorded lien on the New York Property was a mortgage (the "First Lien Mortgage") that is not in question in this proceeding.

Also in December, 2001, the Trustee filed an adversary action against Jackson in Bankruptcy Court ("First Jackson Adversary"). The Trustee sought to recover fraudulent Transfers made to Jackson by the Debtor and to impose a constructive trust on the NY Property. At all material times, Jackson was represented by counsel whose competence has not been challenged.

On the eve of trial of the First Jackson Adversary in October 2002, a settlement was agreed upon among the Trustee, the Debtor and Jackson (the "Settlement Agreement"). There were three key components of the Settlement Agreement: (1) a conveyance of a Houston condominium from the Debtor to the bankruptcy estate; (2) a conveyance of the NY Property by Jackson to the bankruptcy estate; and (3) a compromise by which the Trustee agreed to accept, on behalf of the bankruptcy estate, $140,000.00 of the $195,541.71 that the Trustee was seeking from Jackson and the Debtor. The condominium and the NY Property were to be deeded over by October 11, 2002. The Trustee agreed to rent the NY Property to Jackson for a short period so that she would not immediately need new lodging.

The conveyance of the NY Property was subject only to Jackson's warrantying, and the Trustee's verifying, that the only lien on the NY Property was the First Lien Mortgage.

Promptly after reaching the settlement with Jackson and the Debtor, the Trustee verified Jackson's representation that the First Lien Mortgage was the only encumbrance, other than the *lis pendens*, on the NY Property, by obtaining an abstract of title.

Jackson delayed executing a general warranty deed (the "Deed") to the NY Property until November 5, 2002. The Deed was not recorded until December 21, 2002. In the Deed, Jackson again represented that the NY Property was free of encumbrances other than the First Lien Mortgage.

Unbeknownst to the Trustee, however, while Jackson was negotiating the settlement of the First Jackson Adversary, she was also negotiating with Appellant for a home equity line of credit ("HE Line") secured by the NY Property. The HE Line was funded and Appellant placed a lien on the NY Property on November 12, 2002. Jackson used the monies advanced on the HE Line to buy, among other things, a used Jeep and a Mercedes. Appellant had failed to inquire as to claims on the property, verifying only that title to the New York property was in Jackson's name. Appellant did not learn, therefore, that a *lis pendens* had previously been filed.

Subsequently, Jackson listed the property for sale with a New York realtor, even though title was then held by the Trustee. Only when the Trustee sought permission from the Bankruptcy Court to sell the NY Property in August 2003 did he discover that Jackson had granted a lien to secure the HE Line. Although that lien was recorded after the *lis pendens*, it was recorded prior to the recording of the Deed to the NY Property that conveyed title to the Trustee.

In order to facilitate the sale of the NY Property while the conflicting claims of the Trustee and Appellant were being resolved, the Bankruptcy Court allowed the Trustee to set aside $50,000 of the sales proceeds in a segregated account (the "Escrowed Funds"). The

Trustee also filed an adversary action against Appellant and Jackson (the "Second Jackson Adversary"). The Trustee sought, among other things, to avoid the Appellant's lien securing the HE Line as a fraudulent transfer under Texas law, to establish its right — as against Appellant — to the $50,000 in sales proceeds, and to recover from Jackson for the misrepresentations she made to the Trustee.

II.     The Bankruptcy Court's Ruling

The Bankruptcy Court held that Appellant had constructive notice of the *lis pendens* notice and that the Trustee was, therefore, entitled to the $50,000. The Bankruptcy Court declined to hold that Jackson's conduct constituted a fraudulent transfer, or to award damages against her. To the contrary, the Court ordered Appellant to reduce the principal amount of the debt owed to Appellant by Jackson.

III.    Standard of Appellate Review

On appeal to a district court, "a bankruptcy court's findings of fact are subject to clearly erroneous review. *See In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir. 1980). Conclusions of law, on the other hand, are reviewed *de novo*." *In the Matter of Kennard*, 970 F.2d 1455, 1457-58 (5th Cir. 1992).

IV.     Fraudulent Transfer

The Trustee contends that Texas's fraudulent transfer law applies to Jackson's conveyance to Appellant. Tex. Bus. & Com. Code § 24.001 *et seq.*    Appellant contends that New York law applies. NY DEBT. & CRED. LAW § 276 *et seq.* The Court finds it unnecessary to resolve this dispute. Both states' statutes contain the time-honored language that a transfer made with "actual intent to hinder, delay, or defraud" a creditor is a fraudulent transfer.

Jackson's conduct falls squarely within this definition. As a matter of law, placing the lien on the New York Property was a fraudulent transfer. Having undertaken obligations to the Trustee and, through him, to the Bankruptcy Court, and after having been fully advised by counsel, Jackson surreptitiously sought to delay, hinder and defraud the Trustee, who was a creditor by virtue of the very settlement agreement that Jackson sought to subvert. None of Jackson's misconduct can, however, be attributed to Appellant. Indeed, Appellant was a victim of Jackson's misconduct at least as much as the Trustee.

Both the Texas and New York fraudulent transfer statutes provide that a fraudulent conveyance cannot be set aside (or "avoided") against a purchaser or transferee who has given fair consideration and is without knowledge of the fraud. TEX. BUS. & COM. CODE ANN. § 24.005(a)(1); NY DEBT. & CRED. LAW § 278. The question is, therefore, whether the Appellant — who, all concede, did not have actual knowledge of the *lis pendens* on the NY Property — should be charged with constructive knowledge.

Unfortunately for Appellant, both statutes answer in the affirmative. *Jackson Law Firm v. Chappell*, 37 S.W. 3d 15, 27-28 (Tex. App. – Tyler 2000); *Continental Radio Co., Inc. v. Continental Bank & Trust Co.,* 369 S.W.2d 359 (Tex. App. – Houston 1963). *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2nd Cir. 1995). Appellant is, therefore, charged with notice of the *lis pendens* that was recorded before its lien.

Accordingly, Appellant's lien on the NY Property should be set aside or avoided, and the Bankruptcy Court's decision to the contrary is VACATED. Appellant does not have any claim to the $50,000 Escrowed Funds. Appellant most certainly does have, however, every right to pursue Jackson for the full amount of the debt that she owes, together with applicable attorneys' fees and costs. The Bankruptcy Court's ruling that Jackson's debt to Appellant be reduced —

because Appellant allegedly caused Jackson to expend unnecessary legal fees, or for any other reason — is VACATED.

The Court also disagrees with the Bankruptcy Court's ruling that the Trustee cannot seek damages from Jackson as a result of Jackson's breach of the Settlement Agreement and, in particular, her fraudulent transfer of the NY Property. The Bankruptcy Court's ruling on that issue is likewise VACATED.[1] The Bankruptcy Court's ruling on the attorneys' fees of the Trustee is also VACATED. A new application for attorneys' fees, including time and expenses incurred in connection with this appeal, should be submitted to this Court, with notice to all parties in interest.

In light of the foregoing, the many other issues presented by the parties need not be separately addressed.

IT IS SO ORDERED.

SIGNED this 24th day of January, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[1] Whether Jackson is worth pursuing is another matter. Counsel for the parties, including counsel for Jackson, who appears to have conducted himself ethically at all times in a difficult representation, should confer as to whether agreed judgments can be entered against Jackson and in favor of Appellant and the Trustee.